PEOPLE v. PECK.

1. CRIMINAL APPEAL—BRIEF—COURT RULES.
   Where the brief of plaintiff in error contains no statement of
   the facts, nor of the errors on which he relies, nor of the
   questions involved, nor the manner in which they are raised,
   as required by Rule 40 of this court, the fact that the case is
   one involving personal liberty alone prevents affirmance of
   the verdict without an examination of the questions raised,
   and even then the action of the court is not to be regarded
   as a precedent.

2. JURORS—VOIR DIRE—USE OF PEREMPTORY CHALLENGES—PREJ-
   UDICIAL ERROR.
   In a criminal case it is reversible error, regardless of whether
   peremptory challenges have been used, to refuse to permit
   jurors to be asked on their voir dire examination "if, * * *
   the testimony is evenly balanced in your mind * * *
   which way would you be inclined to lean, for or against the
   defendant?"

3. CRIMINAL LAW — EVIDENCE — OTHER OFFENSES — CROSS-EXAM-
   INATION.
   On a prosecution for embezzlement of the amount of a check,
   sent by prosecuting witness to defendant to buy tax titles,
   the parties were shown to have had a number of business
   transactions and some litigation, and the vital issue in the
   case on which the evidence was conflicting was whether a re-
   ceipt introduced by defendant for the money alleged to have
   been embezzled was a forgery. Held, that it was error to
   require defendant on cross-examination to answer concern-
   ing receipts in other transactions, which, on an accounting
   between defendant and the prosecuting witness, had been
   disallowed as credits on the claim of the prosecuting witness
   that they were forgeries.

4. SAME—EVIDENCE OF PROSECUTING WITNESS.
   It was error also to permit the prosecuting witness to state
   that receipts in other transactions were forgeries, and that
   on an accounting between defendant and the prosecuting
   witness they had been disallowed as credits, on the claim of
   the prosecuting witness that they were forgeries.

5. EMBEZZLEMENT — CHECK — HISTORY—ADMISSIBILITY IN EVI-
   DENCE.
   On a prosecution for embezzlement of the amount of a check

sent by prosecuting witness to defendant, proof of the history
of the check was admissible, where the defense admitted the
receipt of the check and of the money on the check, and in-
sisted that it had been accounted for to the prosecuting wit-
ness.

Exceptions before judgment from Muskegon; Russell,
J. Submitted February 16, 1905. (Docket No. 233.)
Decided April 21, 1905.

William Peck was convicted of embezzlement. Re-
versed.

*Turner & Turner,* for appellant.

*George S. Lovelace,* Prosecuting Attorney, and
*Charles B. Cross,* Assistant Prosecuting Attorney, for
the people.

OSTRANDER, J. This case comes here on exceptions
before sentence. Respondent was convicted of having,
on December 17, 1898, embezzled and fraudulently con-
verted to his own use $250 of the goods and chattels of
another, contrary to the provisions of 3 Comp. Laws, §
11570. No attempt has been made by counsel for appel-
lant to comply with Rule 40 of this court. His brief con-
tains no statement of the facts, nor of the errors upon
which he relies, of the questions involved, or the manner
in which they are raised. The fact that it is a case involv-
ing personal liberty alone prevents affirmance of the ver-
dict without examination of the questions raised. Nor
must this action of the court be regarded as a precedent.

In November, 1897, respondent, who lived at Montague,
Mich., wrote to the complaining witness, Nathan H.
Webb, with whom he had had similar transactions, invit-
ing him to invest $250 in purchasing certain tax titles from
the State of Michigan. Mr. Webb lived at Austin, Ill. Pur-
suant to the correspondence had, Mr. Webb sent to respond-
ent his check for $250, and later, on request of respondent,
$25 additional. Respondent cashed the checks, purchased
a sight draft at the Muskegon County Bank for $267 and

sent to a person in Lansing, Mich., to be used at the office of the auditor general to purchase the tax interest. This was in December, 1897. The land had been redeemed, and on December 9, 1897, the money was returned to respondent by way of a State treasurer's check, upon which respondent within a day or so obtained the money. It is claimed by Mr. Webb that he did not learn for several years that the check was not used for the purpose intended, and that his first knowledge came from respondent's testimony in litigation which arose between them. After some investigation, on July 10, 1903, a criminal complaint was made by Webb; respondent was arrested, examined, and held for trial. The complaint, as well as the information, charges in different counts the felonious appropriation of the check and its proceeds. Neither the complaint, the testimony before the magistrate, nor the information leaves room for doubt about the particular transaction involved.

In selecting the jury, counsel for respondent asked of one of the panel presented this question:

"If, in the proof introduced here, witnesses should take the stand on the part of the people and on the part of the defense, and at the end of the trial you retire to your jury-room to deliberate on your verdict, suppose that you then ascertain that the testimony is evenly balanced in your mind (that is, as much upon one side as the other, and entitled to the same weight and credence), which way would you be inclined to lean—for or against the defendant?"

This was objected to by the prosecuting attorney, the objection was sustained, and an exception for respondent was taken. Upon proceeding to ask other jurors the same question, the trial judge said:

"It isn't necessary for you to ask that question. I have ruled on it, as far as that is concerned. It isn't a proper question anyway."

Thereupon another exception was entered for respondent. So far as the record discloses, no objection was made to any juror, nor any other questions asked the jury by counsel for respondent. There was no argument, nor was

the court referred to any authority. In *Monaghan* v. *Insurance Co.*, 53 Mich. 238, 245, the following question was asked a juror:

"Suppose, in this case, after the evidence is all introduced, you should believe that it was evenly balanced, so that there was as much for the plaintiff as for the defendant, which way would you be inclined to lean—against or in favor of the company?"

To this counsel for the plaintiff objected for the reason that the juror would probably be guided by the court, and the court said:

"Of course, the party that has affirmation of an issue must produce a preponderance of evidence, and, if the evidence was evenly balanced, they would be obliged to find against the party that had the affirmative of the issue. I don't think the question is proper. I don't permit the juror to answer it."

This court held the question a proper one, and that the court erred in not permitting the juror to answer. That the question was a proper one is conceded. In *Township of Otsego Lake* v. *Kirsten*, 72 Mich. 1, 6, it was held proper to be answered. In *People* v. *Keefer*, 97 Mich. 15, 19, it was held error to exclude such a question. In *Towl* v. *Bradley*, 108 Mich. 409, a case from Muskegon circuit, it was held that the case came within the rule announced in *Monaghan* v. *Insurance Co.* We regard it as the settled law of the State that counsel have the right to interrogate jurors upon their voir dire to the precise point indicated by the question here asked, and that it is reversible error to exclude such questions and the answers to them. As is explained in *Monaghan* v. *Insurance Co.*, the fact that counsel have not or do not use peremptory challenges does not affect the question. Such questions are asked to enable counsel to judge of the propriety or the necessity of peremptory challenges.

Upon the trial respondent claimed that he had repaid to Mr. Webb the money he was accused of having converted, and he produced and offered in evidence a receipt for it, purporting to be signed by Webb. The fact and the

giving of the receipt were denied, and the signature to the receipt was declared by Webb to be forged.   Upon this question of forgery or no forgery, an issue of fact, vital and controlling, was presented.   Upon his cross-examination of respondent upon this issue the prosecuting attorney asked the following questions, which, over objection, were required to be answered:

" Q. You had some other receipts you did introduce or claim credit for that Mr. Webb claimed were forgeries, didn't you?   *   *   *

" Q. You had some other receipts or papers or orders you introduced, or attempted to, upon the accounting of Mr. Webb's father's estate, which Mr. Webb claimed were forgeries ?   *   *   *

" Q. You were not allowed any credit for that, were you?   *   *   *

" Q. Isn't it true that the court refused to allow you any credit for it in any respect ?"

The parties were shown to have had a number of business transactions, and some litigation, and it was the claim on the part of the people that respondent had forged other papers besides the particular one involved upon this trial.   The answers to these questions, while admitting that Mr. Webb claimed there were other forgeries, do not in any way admit that they were, in fact, forgeries, and explain why no credit was given respondent by the court in the matter to which his attention was called.   This was not proper cross-examination.   It was not material that Mr. Webb claimed that other papers were forged, nor that some court had disallowed a claim presented by respondent.   Whether, in view of the answers of respondent, by which the people were bound, reversible error was committed, we do not determine.   The prosecution did not rest upon respondent's answers to these questions.   Upon rebuttal Mr. Webb not only testified—as was competent and proper—that the receipt in question was forged, but was permitted over objection to testify as follows:

" Q. Will you state whether or not Mr. Peck has ever used, or offered to use, upon the trial of any of these other

cases which have been pending between you and him, any other forged papers or documents ?

" *A.* Yes, sir; he has.

" *Q.* Mr. Peck's attention was called the other day to an order claimed to have been given by you authorizing the applying of $563, or $567, I don't recollect which, as an advancement against your father's estate. Will you state whether that order was ever given or signed by you at all ?

" *A.* Never.

" *Q.* Was any such order of any kind or character ever signed by you ?

" *A.* Never.

" *Q.* That was a forgery ?

" *A.* It was a forgery out and out.

" *Q.* Was there also a forged note, or a forged indorsement of one, or something of that kind ?

" *A.* A forged note at the bank."

Upon motion made to strike out all of this testimony, which was denied, the court said :

" The jury cannot pay any attention so far as they refer to a conviction, and that would not warrant the jury in convicting the defendant of this crime; that is not the object of the admissibility of them at all; that is not what they are admitted for."

Counsel for the people do not refer us to any authority supporting this procedure. It is said in the brief that this testimony was admissible, not for the purpose of showing this particular receipt was a forgery, but to show respondent's felonious and guilty intent. The issue was, as we have stated, whether a particular receipt, produced by respondent, was genuine or was forged. Respondent contended that it was genuine, Webb that it was forged. Any competent evidence bearing upon this issue was proper to go to the jury. But Webb's statement that other papers were forged raised new issues. Respondent could not be expected to meet and to try these various issues. The cross-examination of respondent and the direct examination of Webb, taken together, was prejudicial to respondent, inasmuch as the jury were at liberty to infer that respondent's guilt or innocence of other claimed forgeries was a matter for them to determine.

In the charge to the jury the court said upon this subject:

" The evidence tends to show that there has been some controversy heretofore over other receipts that were claimed to be forged.    You have a right to take that matter into consideration; but be careful.    You are not warranted in convicting this defendant of this crime simply because he has been accused, or it is claimed that other receipts have been forgeries.    It is a matter you have a right to take into consideration in connection with the case."

It will be seen that the jury were not told for what purpose they might consider this evidence—for what purpose it was before them.    If respondent had been on trial for forging the particular receipt, the testimony would have been inadmissible.    *People* v. *Henry*, 129 Mich. 100; *People* v. *Lonsdale*, 122 Mich. 388.    It does not fall within the rule of *Helwig* v. *Lascowski*, 82 Mich. 619 (10 L. R. A. 378).

We pass the assignments of error based upon the testimony of Mr. Webb of the contents of letters written to respondent because the respondent afterwards produced the letters themselves.

The various assignments relating to proof of the history of the check are overruled.    It was proper to lay the whole matter before the jury.    The defense admitted the receipt of the check and of the money on the check, and insisted it had been accounted for to the owner.    There was no error in refusing to rule that respondent and Webb were partners in the transaction involved.

We have examined such of the other assignments of error as are at all discussed in the brief for respondent. Some are not likely to arise upon a new trial.    Others, in the view we have taken of the case, require no discussion.

For the reasons herein assigned, the conviction should be set aside, and a new trial granted.

CARPENTER, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.