HUNTER *v.* TOWNSHIP OF DWIGHT.

1. PRACTICE—SUPREME COURT—BRIEFS—POINTS RELIED ON.
    The brief of an appellant should conform to Supreme Court Rule 40, in stating the errors on which the party relies.

2. HIGHWAYS AND BRIDGES—MUNICIPAL CORPORATIONS—JOINT LIABILITY.
    A township which undertakes to keep the bridge in repair, on its line between that and another township, in pursuance of an attempted agreement between the adjoining townships to maintain specified divisions of the highway, is liable for negligence in keeping the bridge repaired. 2 Comp. Laws, §§ 4047, 4067.

3. NEGLIGENCE—NOTICE OF DEFECTIVE CONDITION.
    Evidence that officers of a township, including the highway commissioner, had been notified of the defective condition of the bridge, and that the condition existed several months, tends to show actual and constructive notice.

4. PLEADING—NEGLIGENCE—EVIDENCE—VARIANCE.
    A declaration which fully alleges the dangerous condition of the bridge, and the cause of injury, and states that the plaintiff's horse became frightened, sprang forward and the wagon was suddenly checked because of the defective planks, is sufficiently sustained by proof of the dangerous condition and of the fact that the horse stepped into the holes caused by certain loose plank, and suddenly checked the progress of the wagon, throwing plaintiff forward and injuring him.

5. SAME—VARIANCE.
    An instruction that the plaintiff must be held in his proofs to something approximating the condition stated in the declaration is not improper when read in connection with following parts of the charge, stating that he must prove his theory by a preponderance of the evidence, and any radical variance would preclude a recovery.

Error to Huron; Beach, J. Submitted April 26, 1909. (Docket No. 96.) Decided July 15, 1909.

Case by William H. Hunter against the township of

Dwight for personal injuries.  A judgment for plaintiff is reviewed by defendant on writ of error.  Affirmed.

*James H. Hall* (*Edward Cahill,* of counsel), for appellant.

*George M. Clark* (*Wilbur J. Beach,* of counsel), for appellee.

HOOKER, J.   The plaintiff recovered a verdict for $1,000 against the defendant township for injuries sustained upon a bridge, and defendant has appealed.

The appellant's brief does not conform to the requirement of Supreme Court Rule 40 in the matter of stating the errors relied on.  See *Ferguson* v. *Wilson,* 122 Mich. 98 (80 N. W. 1006, 80 Am. St. Rep. 543); *Carmer* v. *Hubbard,* 123 Mich. 336 (82 N. W. 64, 48 L. R. A. 583); *Jones* v. *Cody,* 132 Mich. 14 ( 92 N. W. 495, 62 L. R. A. 160); *People* v. *Cole,* 139 Mich. 317 (102 N. W. 856), and cases cited; *People* v. *Peck,* 139 Mich. 680 (103 N. W. 178); *Monger* v. *New Era Ass'n,* 145 Mich. 684 (108 N. W. 1111); *Eberts* v. *Railway,* 151 Mich. 264 (115 N. W. 43); *Haden* v. *Closser,* 153 Mich. 182 (116 N. W. 1001).  As we have often said, such omissions are productive of much inconvenience to the court and are hazardous to the interest of appellants.

The plaintiff was a mail carrier, and the bridge in question was upon a highway upon the township line between the townships of Dwight and Huron.  The action was brought against the defendant upon the theory that it was under obligation to, and did undertake to, keep the way in repair, and was liable for neglecting to do so.  The defendant denied such duty and liability, and this raises the first question discussed.

The defect in the bridge, as alleged in the declaration, was that:

" On, to wit, the 22d day of May, A. D. 1905, and for a long space of time prior to said date, carelessly and negligently caused said bridge and allowed said bridge to be

and to remain in a condition out of repair and in a condition not reasonably safe and fit for public travel, in this, the top of said bridge, before the time last above mentioned, having been made of boards or planks supported by stringers of wood, the said defendant, at the time of the committing of the grievance, herein mentioned, and for a long space of time prior to said date, carelessly and negligently permitted and allowed a part or all of the planks on said bridge to become and be loose from the stringers, and carelessly and negligently allowed a part of the planks on said bridge to become and be broken and displaced so that said plank so broken and displaced was not properly supported by the stringers of said bridge, leaving the loose ends of said planks so broken and displaced not supported by the stringers of said bridge and not fastened to the stringers of said bridge, carelessly and negligently allowed a part of the planks on said bridge to be loose and unsupported so that in public travel when subjected to the weight of horses, one end of said planks would go down and the other end fly up, carelessly and negligently allowed holes or openings to be and remain unprotected directly in the traveled part of said bridge."

A second count states that:

"On account of the loose and broken plank and the dangerous condition of said bridge, the horse in attempting to cross over said bridge became frightened and sprang violently forward, and then and there, and because of the entanglement and obstacles to free passage over said bridge, constituted by the loose, broken, and projecting condition of said plank, plaintiff's wagon was suddenly checked, and plaintiff thereby pitched, jerked, or thrown forward in his mail wagon with great violence."

The plaintiff testified to the condition of the bridge at the time of the accident (May 22, 1905) that it was the same as in September and October, 1904, and that he informed the officials of the township that it was dangerous in September, 1904, and it is contended in plaintiff's behalf that there was testimony tending to show actual and constructive notice. This is the second question raised.

Appellant's counsel contend that the testimony fails to show that the injury was due to the negligence alleged,

and that the trial judge should have directed a verdict for the defendant. They also assign error upon the following language of the charge:

"Now the plaintiff has charged in his declaration certain acts of negligence and given a description of the manner in which the bridge was defective and the manner in which he claims that it caused his injury. He must be held in his proofs to something approximating the condition which he states in his declaration."

This should be read in connection with what followed it in the charge:

"As I understand the declaration, he alleges that there was a broken plank and a hole in the bridge, and that the bridge, the planks of the bridge, and the sleepers were in that condition that when a vehicle and horse passed over them they would sink down. The plaintiff alleges that from this condition his horse was caught, and plunged, tipped up the plank, and first his front leg and then his hind leg went into the hole, and that in the plunging and the violence of the horse's actions in those conditions, and in his attempt to save himself and control him, he was thrown in the manner in which he described in his testimony, and that as a result he discovered immediately after that he was ruptured. Now I have said to you that the plaintiff must be held, if he is to recover, to produce to you a preponderance of the testimony sustaining that theory of the manner in which he was injured. Any radical departure from that theory would not entitle him to recover because the township would have no notice of any other claim as to the manner in which the injury occurred."

A motion for new trial was denied, and counsel assign error upon the order.

1. Defendant's duty to keep bridge in repair. As already stated, the bridge in question was upon a line of road between two townships which was in existence in 1879. At that time the law provided:

"Upon laying out, altering or discontinuing a highway on the line between adjoining townships, or upon determining what part of such highway shall be made and repaired by each township, the commissioners of such adjoining townships shall act jointly, and application

may be made to the commissioners of either township, who shall notify the commissioners of the adjoining township of the time and place of meeting; and said commissioners of adjoining townships shall proceed as before provided and their return shall be filed in the office of the township clerk of each township, and each township shall have all the rights and be subject to all the liabilities, in relation to the part of such highway to be made and required by such township, as if the same was located wholly in such township." Act No. 163, Laws 1861, § 4.

The clerk of the defendant township of Dwight produced a record from his office containing the following:

" March 25, 1879. We the undersigned commissioners of the township of Dwight, and the township of Huron, county of Huron, State of Michigan, do hereby divide the town line into half-mile beats commencing at the north end of the township line between Dwight and Huron running south six miles, which is the extent of said road, Dwight taking the first half-mile commencing at the northeast corner of section 1 running southward, Huron the next half mile, and thence each alternate half mile afterwards.

" THOMAS SULLIVAN,
" Commissioner of Highways."

The brief of plaintiff states that this writing conformed to an oral agreement made at the time between the commissioners of the townships of Huron and Dwight, and that under such arrangement defendant township took charge of and maintained its portion, including the bridge. The brief omits any reference to the record, and we take the opportunity of saying that such omissions are productive of much annoyance and trouble to the court, and to request the exercise of greater care by counsel in this particular.

*Shark* v. *Township of Evergreen*, 67 Mich. 443 (35 N. W. 67), is a similar case to this. There a State road upon a town line was divided by commissioners by agreement, and each township afterwards cared for its allotted share for more than 20 years, although the agreement was never recorded. It was held that the road was within the statutes following:

"Whenever a line road shall have been laid out and established pursuant to the two last preceding sections, the officers or authority having jurisdiction in the premises shall forthwith jointly determine as to the time when the same shall be opened and improved, and shall at the same time determine and allot what portion shall be opened, improved and maintained by either of such townships or municipalities; and such township or municipality shall have all the rights, and be subject to all the liabilities, in relation to the part of such road so allotted, as if the same was located wholly in such township or municipality, and the damages which may be assessed in any case, together with the costs and expenses of the proceedings, shall be apportioned by the joint action of such authorities to, and paid by, the townships or municipal corporations on the line between which said line road may be located, in proportion to the benefit to be derived therefrom by such townships or municipal corporations." 1 How. Stat. § 1307.[1]

"All State roads, which are now or may hereafter be laid out in this State, shall be under the care of the commissioners of highways of the several townships, through which the same shall pass, and subject to be by them opened and kept in repair in the same manner as township roads, but such State roads shall be altered or discontinued only by the boards of supervisors of the counties in which they may be situated." 1 How. Stat. § 1321.[2]

"Any person or persons sustaining bodily injury upon any of the public highways or streets in this State, by reason of neglect to keep such public highways or streets, and all bridges, cross-walks, and culverts, on the same, in good repair, and in a condition reasonably safe and fit for travel, by the township, village, city or corporation, whose corporate authority extends over such public highway, street, bridge, cross-walk, or culvert, and whose duty it is to keep the same in good repair, such township, village, or city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages, to be recovered in an action of trespass on the case before any court of competent jurisdiction." 1 How. Stat. § 1442.

The only substantial difference between that case and

---

[1] 2 Comp. Laws, § 4047.
[2] 2 Comp. Laws, § 4067.

this is the requirement that such agreement shall be
recorded.

Whether this agreement was in duplicate, each town-
ship recording a copy signed only by its own commissioner,
was not shown; but such an instrument, signed only by
its own commission, was recorded in Dwight township,
and it afterwards took charge of its part of the way.
We are of the opinion that it should be held liable for
derelictions of duty in regard to repairs. *Sharp* v.
*Evergreen, supra; Brophy* v. *Schindler,* 126 Mich. 350
(85 N. W. 1114); *Bigelow* v. *Brooks,* 119 Mich. 216
(77 N. W. 810); *Delta Lumber Co.* v. *Board of Audit-
ors,* 71 Mich. 572 (40 N. W. 1); *Wrought-Iron Bridge
Co.* v. *Township of Jasper,* 68 Mich. 441 (36 N. W. 213.)

The townships not only had the right, but it was their
duty (through their commissioners), to divide the road.
They did this by agreement and proceeded to carry out its
terms.    Dwight has maintained this bridge ever since,
and now seeks to take advantage of its own failure to
properly make record evidence of the contract.    If it be
said that the contract was not binding, because not made,
it does not help defendant, for it was then jointly liable
with Huron.    *Delta Lumber Co.* v. *Board of Audit-
ors, supra; Bigelow* v. *Brooks, supra.*

2. Notice. We are of the opinion that there was evi-
dence of notice sufficient to require submission to the jury.
There was certainly constructive notice that the planking
was in bad condition.

3. Variance. The negligence charged in this declara-
tion is, in substance, that defendant maintained a bridge
which, by reason of the settling of its foundations, caused
some of the stringers to drop down from two to six inches,
so that the loose plank, of which the floor of the bridge
was made, would teeter and rattle when a horse or vehicle
went over them, and that there was a hole or holes in the
traveled track upon said bridge, and broken and displaced
plank in the floor of said bridge.    The cause of the injury
appears to be (as set up in the first count) that, on account

of the loose and broken plank and dangerous condition of said bridge (as hereinbefore described, we suppose), the horse—

" Became frightened and sprang suddenly forward with great violence, and because of his springing suddenly forward as aforesaid, and before plaintiff could regain control of said horse, and because of the loose and broken condition of said plank and bridge, the plaintiff's wagon was suddenly checked, and the plaintiff then and there was jerked, pitched, or thrown forward " and injured.

The proof failed to show that plaintiff's horse was frightened and sprang forward; but it did show that his feet went through the bridge floor by reason of a plank breaking or tipping when he stepped upon it, and it was possible to find that the horse got both fore and back feet through, that he fell down, and that in consequence the buggy was checked, which would not have been the effect of a spring forward. That would not have checked the wagon and would have thrown plaintiff backward instead of forward. The important allegation is that the buggy was suddenly checked, throwing plaintiff forward. The declaration does not fully explain how this was done; but it does say that it was due to the broken and loose plank and holes. We are of the opinion that this declaration might well have been more specific in the description of the accident, but think it alleges in substance the nature and the cause of the accident. The fact that the proof does not clearly show that the horse first became frightened and sprang forward is not fatal; there being testimony that the wagon was suddenly checked, which of itself necessarily implies some momentum, and an obstacle to its progress. Perhaps fright is inferable from the following: Plaintiff testified that, as the horse went on the bridge, he got a tight hold upon the lines, that the horse seemed to watch a hole in the bridge, that when she stepped on the plank opposite the hole, her feet went down by reason of its giving way, and in another place plaintiff stated that the plank turned upon edge and the

horse's feet went through, her head down to the plank, that she plunged and fell, and that occasioned him to go forward against the cover of the rig. The horse rolled over and got up.

It seems clear that the declaration fairly apprised defendant that plaintiff was relying upon an injury arising from the fright of the horse arising from the existence of holes and loose plank. The proof conclusively showed that the horse's feet went through the plank, causing it to fall and plunge, thus causing the injury. The court charged:

"Now the plaintiff has charged in his declaration certain acts of negligence and given a description of the manner in which the bridge was defective, and the manner in which he claims that it caused his injury. He must be held in his proofs to something approximating the condition which he states in his declaration. As I understand the declaration, he alleges that there was a broken plank and a hole in the bridge, and that the bridge, the planks of the bridge, and the sleepers were in that condition that when a vehicle and horse passed over them they would sink down. The plaintiff alleges that from this condition his horse was caught and plunged, tipped up the plank, and first his front leg and then his hind leg went into the hole, and that in the plunging and the violence of the horse's actions in those conditions, and in his attempt to save himself and control him, he was thrown in the manner which he describes in his testimony, and that as a result he discovered immediately after that he was ruptured. Now, as I have said to you, that the plaintiff must be held, if he is to recover, to produce to you a preponderance of the testimony sustaining that theory of the manner in which he was injured. *Any radical departure from that theory would not entitle him to recover because the township would have no notice of any other claim as to the manner in which the injury occurred.*"

We think defendant was not injured by this instruction.

4. Motion for new trial. We find no error in the denial of the motion for a new trial.

The judgment is affirmed.

BLAIR, C. J., and MONTGOMERY, OSTRANDER, and BROOKE, JJ., concurred.