MOILANEN v. WASHINGTON IRON CO.

1. PLEADING—VARIANCE—APPEAL AND ERROR.
   In the absence of a motion for a directed verdict or any objection to the evidence, on the ground that there was a variance between the declaration and proofs, the point will not be considered on writ of error.

2. SAME—INSPECTION—TRIAL—INSTRUCTIONS TO JURY—MINES AND MINING.
   Where defendant, in an action for personal injuries, sustained in its mine by the falling of rock, claimed that the premises had been adequately inspected two weeks before the fall, but the testimony showed that blasting was done every day in the mine and it had a tendency to loosen the rock, the court properly refused to charge, as requested by defendant's attorneys, that if the place was inspected at the time and in the manner customary in mines of the kind defendant conducted, and such inspection failed to disclose the loose condition of the rock, plaintiff could not recover.

3. APPEAL AND ERROR—WEIGHT OF EVIDENCE—VERDICT.
   A verdict will not be set aside on error if the contention of the prevailing party was supported by affirmative testimony which, if the jury believed it, would sustain the finding.

4. Damages—Excessive Verdict.
   Five thousand dollars damages for loss of two fingers and
   injuries partially disabling the others, *held*, too large,
   and reduced to three thousand dollars.

Error to Marquette; Flannigan, J. Submitted January 23, 1913. (Docket No. 43.) Decided July 18, 1913. Rehearing denied November 3, 1913.

Case by Aaro Moilanen against the Washington Iron Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reduced and affirmed.

*C. F. Button (E. A. Macdonald,* of counsel), for appellant.

*O'Brien & Le Gendre (George O. Driscoll,* of counsel), for appellee.

Moore, J. The plaintiff was injured while in the employ of the defendant in its mine. He sued, and recovered a judgment for $5,000. The case is brought here by writ of error.

The mine consisted of a single shaft, going down in the ore vein following the dip of the vein, which was at an angle of about 55 degrees. The vein extended north from the shaft, and consisted of a body of ore about 30 feet wide, lying between two well-defined walls, the upper of which was called the hanging, and the lower the foot, wall. Several levels had been driven along the vein from the shaft, overlying each other about 50 feet. The 650-foot level was sometimes called the eighth level. The 700-foot level is 50 feet below the eighth level, and is sometimes called the fourteenth level. Originally these levels were practically tunnels about 7 feet high and 10 or more feet wide. The plan of taking out ore between the eighth and fourteenth levels was to commence on the fourteenth level and excavate a hole, called a

"raise," about 10 feet square up through the ore and into the eighth level above; then to drive horizontal drifts north and south along the vein out of the sides of the raise; the ore removed from the drifts was sent to the level below, where it was conveyed to the main shaft for hoisting.

Some time prior to the accident the ore lying between the eighth level and the level above had been extracted, leaving a room, or "stope" so called, extending along the vein about 60 feet and about 30 feet wide, and because of the slope or dip of the walls, from 30 feet high in the lowest part to 50 feet in the highest part. Some time prior to the accident the defendant commenced removing the ore between the eighth and the fourteenth levels, and one of the questions of fact is how far this had progressed at the time of the accident. It was the claim of the plaintiff that an opening nearly if not quite 50 feet long had been made between the two levels by taking out the ore, while defendant claims that a raise only about 10 feet square had been opened between them.

The accident was the result of a fall of rock weighing about three tons, from the roof of the room on the eighth level, to the floor of the eighth level, where it broke into two or more pieces, one of which found its way to the fourteenth level, where plaintiff was working, and injured him. It was the claim of plaintiff that there was a failure to inspect the roof of this stope or room, as should have been done. This was denied by the defendant. The testimony upon every phase of the case was as conflicting as it could well be. There was no request for a directed verdict at the close of the testimony.

The record contains three and only three requests to charge on the part of the defendant. They are as follows:

"(1) If you find that the place from which this

rock fell was inspected by the employees of the defendant company, in the manner and at the times usual and customary in mines of that character, and that said inspections failed to disclose this rock as loose, then your verdict should be for the defendant.

"(2) If you find that the rock in question fell because of the existence of two intercepting seams or slips so called, and that the place from which this rock fell was examined about two weeks prior to accident by all the customary means of examining places of that character in similar mines, and that such examination failed to disclose the presence of such seams, then your verdict should be for the defendant."

"(4) If you find in this case that the mine of defendant was not opened from the eighth level to the fourteenth level so as to leave no protection from the rock which fell, and that the rock fell upon the floor of the level and rolled or jumped into this raise, then the plaintiff cannot recover."

These were not given except as covered in the general charge.

A motion for a new trial was made for many reasons. This motion was overruled, and in doing so the trial judge filed a very elaborate opinion, to some portions of which we shall take occasion to refer later.

The errors assigned and argued by counsel are as follows:

(1) Plaintiff did not recover upon the case made by his declaration.

(2) The undisputed testimony is that the rock which injured plaintiff fell from the hanging wall because of the presence of two intersecting seams, which were not discoverable, and were not discovered by examination. Therefore, the court erred in refusing to give to the jury defendant's request to charge No. 2, and erred in refusing to grant a new trial on the same ground.

(3) The verdict was against the weight of evidence, and the court should have granted a new trial on this ground.

(4) The verdict is excessive.

Each of these propositions was presented to the trial judge on the motion for a new trial, and are referred to by him in the opinion to which reference has been made.

1. This proposition is argued at great length by counsel. The position of counsel is succinctly stated in this extract from the brief:

"The gist of the declaration, consisting of one count, is that the defendant was negligent because it substantially mined out all the ore between the eighth and fourteenth levels, without leaving pillars or having timbers or other obstructions to prevent rock from above the eighth level falling to the fourteenth level, and because of this condition in failing to inspect above the eighth level, and take down rock found loose. By his testimony the plaintiff attempted to prove that the ore had been removed as claimed for a distance of about 60 feet along the vein to the extent of half or more of the floor of the eighth level on the hanging wall side, leaving a bracket-shaped piece of ground along the footwall, and that the rock struck this part of the floor left, and bounded westerly into this large excavation, leading directly to the fourteenth level, where the plaintiff was.

"The defendant denied that the ore had been mined out, either as claimed by the declaration or as attempted to be shown by plaintiff's testimony, and gave testimony to show that the floor of the eighth level was a flat one, and was intact with the exception of the raise; that it was a part of its mining plan to have the floor so remain, as a protection to those below it, to the latest possible moment; that the rock which fell was a very large one, weighing about three tons; that this rock fell upon the solid floor of the eighth level, about 10 feet north and along the vein from the mouth of the raise, and was there stopped in its downward descent; that in its contact with the floor the rock broke into two or more pieces, and one of the pieces jumped, or in some way found its way southerly and laterally into the mouth of the raise, down which it fell to the injury of the plaintiff below in the fourteenth level."

Counsel quoted freely from the declaration of the plaintiff, but omitted to quote many parts thereof. The following appeared in the declaration:

"That on the 21st day of August, A. D. 1910, this plaintiff was working as aforesaid in the discharge of his duties as a trammer, to wit, at the fourteenth level of said mine, and to wit, about 150 feet north of the shaft of said mine, and while he, the said plaintiff, was prudently and carefully engaged in the discharge of his duties, and without any fault, negligence, or want of care whatever on his part, and by reason of the said negligence and carelessness of the said defendant, and while this plaintiff was shoveling rock into a car at said fourteenth level, in the ordinary discharge of his duties as such employee of the said defendant, a large piece of rock, ore or other matter fell from the sides, roof, or hanging wall of said mine, to wit, at or near the eighth level in said mine, and thereupon said rock, ore, or other matter rolled with great force and violence down to said fourteenth level of said mine, and upon and against this plaintiff."

Again:

"And also to exercise reasonable and ordinary care, skill, and diligence to inspect, maintain, prop, brace, timber, and secure each and every other place in said mine from which said rock, ore, or other matter was liable to fall upon and roll down to the place where plaintiff would so be, remain, or pass, while engaged in and about the performance of his duties; that it was, furthermore, the duty of the said defendant to use and exercise reasonable and ordinary care, skill, and diligence in and about the pinching, barring down, or otherwise removing any and all loose ore or other loose matter, or any rock, ore, or other matter liable to fall down in any stope or other place in said mine and down to the level at, upon, or near which this plaintiff was at work, and to use and exercise like care, skill, and diligence to remove any pieces of rock, ore, or other matter, which was liable to fall upon or against said plaintiff, and to maim or injure him while engaged in and about the discharge of his

duties as such servant or employee of the said defendant."

Again:

"That the said defendant failed and neglected to use and exercise like care, skill, and diligence in and about the inspecting, maintaining, propping, bracing, timbering, supporting, securing and protecting each and every place in said mine in or about which defendant ordered, directed, required, suffered, permitted, or expected the plaintiff to work, pass, be, or remain, while he was employed by the defendant as aforesaid, in that the said defendant wholly failed and neglected to inspect, maintain, prop, brace, timber, support, secure, and protect the roof and sides of said mine in and about the place where the said plaintiff had to work, and in and about other places from which rock was likely to fall upon, and roll down to, upon, and against the said plaintiff; that the said defendant failed to and neglected to inspect, prop, brace, timber, and secure such other places in said mine from which rock, ore, or other matter was liable to fall upon, and roll down to the place or places where plaintiff would so be, remain, or pass, while engaged in and about the performance of his duties as such employee of defendant; that the said defendant failed and neglected to exercise reasonable and ordinary care and diligence in and about the pinching, barring down, or otherwise removing any and all loose rock, ore, or other matter, or any ore, rock, or other matter liable to fall down in any stope or room, or any other place in said mine, and down to and upon the level at, upon, or near the place this plaintiff was or would be at work, and allowed and permitted several places in said mine from which rock was liable to fall to the place where plaintiff was so employed from time to time, in an unsafe and dangerous condition, in that the roof and sides thereof were loose, and the superincumbent ore, rock, or other matter was liable to fall from said roof, and roll down said mine to the place where plaintiff was so working as aforesaid."

It is true that the plaintiff and defendant do not agree as to the situation in the mine of the opening between the eighth and fourteenth levels; but they do

agree about where the plaintiff worked when he was hurt, and that he was hurt by the falling of a mass of rock which came from the roof of the eighth level; the plaintiff claiming that the roof was not properly inspected, and the defendant claiming that it was.

In respect to this contention the trial court said in the opinion to which reference has been made:

"The position of the defendant is that the plaintiff, by his declaration and opening statement to the jury, confined himself to the theory respecting the manner of the accident that the ore was mined out between the eighth and fourteenth levels about 50 feet lengthways the vein and from foot to hanging, except a bench of ground on the footwall side of the raise; that the piece of ore or rock which injured the plaintiff fell from the back of the eighth level directly into the raise and against the plaintiff; and confined himself to the claim of negligence, in the manner of excavating the ore, in not providing a cover or obstruction of some kind to prevent ore and rock falling in the raise from the eighth level, and in not inspecting the back of the stope in view of such open and uncovered excavation.

"The defendant further insists the plaintiff should not have been permitted to abandon the foregoing theory as to the manner of the accident, and recover on the other theory that the rock fell from the back to the floor of the level, that it then broke, and a part of it rolled or bounded into the raise; that the defendant, in the exercise of reasonable and ordinary care and diligence, should have anticipated that if the rock fell from the back to the floor it would break, and part of it roll or bound into the raise; that it was the duty of the defendant to use reasonable and ordinary diligence to inspect and test the place from which the rock fell, and by continued inspection and testing of such place, at such intervals as the reasonable conduct of its business of mining, in view of all the circumstances disclosed by the evidence required; and that it failed in the performance of such duty.

"The dimensions of the raise or opening, whichever it may be called, between the eighth and fourteenth levels is not material. Whether the opening was 10

feet square or 50 feet square is beside the question. That there was an opening there not only large enough to admit the rock which injured the plaintiff, but large enough to admit a rock large enough to kill 20 men, must be conceded.

"The plaintiff was about his regular work, conducting himself prudently and without negligence, at the lower end of the opening, and whether the opening was 10 or more feet square, it was the duty of the defendant to protect the plaintiff against rock falling therein, either by properly covering the opening or vigilant inspection of all ground from which material might reasonably be expected to fall, and falling, find its way into the raise."

The important question is, Was the declaration full enough to advise the defendant, so that there might be a full trial upon the merits? There was no objection by the defendant to the admission of testimony on account of variance. There was no suggestion made to the court at the close of the testimony that he direct a verdict because plaintiff had not made the case stated in his declaration. The defendant entered fully into a trial upon the merits. The testimony was conflicting; it was submitted to the jury, which found against defendant. See *Stone* v. *Covell,* 29 Mich. 359; *Merkel* v. *Bennington Township,* 68 Mich. 133 (35 N. W. 846) ; *Plumb* v. *Hecla Co.,* 157 Mich. 562 (122 N. W. 208) ; *Hunter* v. *Township of Dwight,* 157 Mich. 634 (122 N. W. 267).

2. We now come to the second proposition. Did the court err in not giving defendant's second request to charge? A reference to that request which we have quoted herein will show that it proceeds upon the assumption that, if an adequate inspection was made two weeks before the accident, defendant would be relieved of liability. The testimony is that blasts were made every day, and that the tendency thereof was to dislodge rock in the hanging wall. While the

judge did not, and we think very properly, give the second request, he charged the jury as follows:

"But, gentlemen, the defendant is not responsible to the plaintiff for defects not discoverable by ordinary, reasonable, and prudent inspection and testing; and the defendant in this case was not bound to inspect or test more often, or more minutely, or in any manner other than would an ordinarily prudent person engaged in the same business inspect or test under similar circumstances and conditions.

"Again, gentlemen, if the dangerous condition of this rock could not have been discovered upon an ordinary, careful, and prudent inspection or test, then the defendant is not liable for the injury which resulted to the plaintiff.

"Again, gentlemen, if the dangerous condition of the rock might have been discovered by inspection or test, yet if the defendant did use reasonable and ordinary diligence to inspect and test the place from which the rock fell, and did inspect and test the same as often, and as minutely, and in the usual and customary manner as would ordinarily prudent persons engaged in similar business inspect and test under similar circumstances and conditions, then the verdict must be for the defendant. You understand from this, gentlemen, that the defendant is not bound at the peril of liability for an accident to absolutely discover a defective condition of that wall, but it is bound and was bound to use ordinary and reasonable care and diligence to discover the defect in that rock. If it did not perform that duty, it is liable to this plaintiff; and if it did perform that duty, even though the accident resulted, it is not liable to the plaintiff."

There was a sharp controversy upon the question of inspection which raised a question of fact, which we think was properly submitted. *Scendar* v. *Copper Co.*, 169 Mich. 665 (135 N. W. 951).

3. Was the verdict so against the weight of evidence that we ought to set the result aside? Counsel for plaintiff say this question is not open to defendant because not presented to the trial court, or if presented was not urged as appears by his opinion.

Waiving this contention for a moment, we are prepared to say that unless we are to enter upon the province of the jury in determining controverted questions of fact, where the differences between the parties is supported by affirmative testimony which, if believed by the jury, would sustain the verdict, we ought not to set this verdict aside.

4. Is the verdict excessive? In disposing of that question the trial judge said, in part:

"It is true, as the doctor said, the plaintiff can do manual labor, and earn about the same wages as before the accident, provided he is always able to obtain labor a man can do with a right hand such as his. The difficulty lies in the fact that he will not be able to perform as many kinds of manual labor as formerly. He has lost a choice of employment. He must now seek what he can do, not what he would prefer to do. His ability to obtain employment in the future is impaired because he is not, like a man with two good hands, able to do all kinds of common work. In addition, there is the pain he has already suffered, and the humiliation he has and always will suffer, owing to the deformity, humiliation of the kind that will prompt him to offer his left hand as often as he meets a friend. * * * While the verdict was liberal, the testimony furnishes no basis for saying it was clearly excessive."

Not much space is given in the record to a description of the injury of the plaintiff. The mining doctor was called as a witness on his behalf. His testimony impresses us with its fairness. He describes the injury as follows:

"I found the condition of his hand was a fracture of the second and third fingers and a fracture of the metacarpal bones back of the first finger; and the blood supply to the first two fingers being destroyed by the smashing force of the injury, it was necessary to amputate. There was no blood left for the healing of these fingers. They were all splintered up, and I had to amputate the second and third fingers. The condition in which the other two fingers was left by

the operation and the injury combined was that there was a compound fracture of the metacarpal bones back of the first finger, and there was about one-half inch of denuded bones, the periosteum destroyed; and I had to remove from a quarter to a half inch of the bone in that finger. The vacant space in between the two has been filled with new bones and callous, and the healing was made complete in that metacarpal bone. That left him with the little finger and thumb not injured in any way; it left the index finger somewhat deformed, and with some stiffness in same. The little finger and thumb are uninjured. The third finger was broken. It is not only an amputation of the finger, but amputation back of the finger. The second finger is amputated at the first joint. The index finger is uninjured so far as the finger is concerned. At the time of the accident, the index finger was denuded of skin for a ways; new skin has now grown in and drawn over from the other side. The injury went clear through the hand, and came out and up the middle of the palm. I removed from a quarter to half an inch of dead bone from the index finger, leaving a limited action in that finger. These injuries are permanent as far as amputation of the two fingers are concerned. My belief is that the stiffness of the index finger will become better as time goes on. I would not say that the hand is useless. I think he could use it for any ordinary laboring work. There would not be as much strength in the hand with the two fingers amputated as there was before. I believe the plaintiff can do manual labor with that hand, and earn about the same wages as he did before. I don't think he could do tramming. I imagine he could do rock picking though; he could do rock picking with that hand; he has got the grasp of that thumb and forefinger. For the first years the scars are more tender, but they get tougher with time."

The plaintiff's own testimony shows that he has since worked and earned $1 a day and upwards. It is not a question of what one would take to have such an injury done. The question is, The injury having been done, what is fair compensation for the injury? We recognize the advantage the trial judge has from

having seen the injured party and seen and heard the witnesses in determining a question of this sort; but a reading of the record constrains us to say that we think the amount of the verdict and judgment is too large.

Unless the judgment is remitted to the sum of $3,000 within 20 days from the filing of this opinion, the case will be reversed, and a new trial ordered. If this remission is made, the case will stand affirmed for that amount, with costs to defendant.

STEERE, C. J., and MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.