87 545
103 57

## JACOB KUHN v. HERMAN FREUND.

*Assault and battery—Evidence—Pleading—Damages.*

1. The judgment of a crowd is not generally so accurate that evidence of its clamor can be admitted, unless the crowd and the party sought to be charged were acting in concert.
2. A witness of an assault cannot testify to his own conclusions, or to those of other on-lookers, or to the effect upon his mind of the assault, or to what "the people there desired," or that "threats of personal violence" were made by others against the assailant.

87 MICH.—35.

3. Epilepsy, irritation of the spinal cord, a depression of the inner table of the skull, and permanent mental disorder, cannot be said to be the ordinary results of an ordinary assault and battery, and unless specially alleged cannot be proved.

Error to Wayne. (Hosmer, J.)   Argued June 19, 1891. Decided October 9, 1891.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*John Miner (Edwin F. Conely*, of counsel), for appellant.

*Edwin Henderson* and *James H. Pound*, for plaintiff.

McGRATH, J. This is case for assault and battery.

The declaration contains three counts. The first alleges that defendant made an assault upon the said plaintiff, to wit,—

"At the city of Detroit, in the county of Wayne, aforesaid, and then and there laid hold of the said plaintiff, and with great force and violence pulled and dragged about him, the said plaintiff, and then and there gave and struck the said plaintiff a great many violent blows and strokes, and then and there choked the said plaintiff, * * * whereby he, the said plaintiff, was not only then and there greatly hurt, bruised, and wounded, but was also thereby then and there greatly exposed and injured in his credit and circumstances."

The second count was abandoned. The third count is as follows:

"And, also, for that the said defendant on, to wit, the day and year aforesaid, with force and arms, etc., made another assault upon the said plaintiff, to wit, at the city of Detroit, aforesaid, and then and there again beat, bruised, wounded, and ill-treated him, insomuch that his life was then and there greatly despaired of, and thereby then and there the said plaintiff was forced to lay out and expend, and will in the future be necessarily forced

to lay out and expend, large sums of money in and about the curing himself of the several wounds, lameness, and disorders (which plaintiff avers were thereby, by the said defendant, then and there inflicted upon him, the said plaintiff), for medicines, nursing, and medical attendance, to wit, the sum of one thousand dollars, and other wrongs to the said plaintiff then and there did, against the peace and dignity of the people of this State, and to the damage of plaintiff of fifteen thousand dollars; and therefore he brings suit."

The plaintiff is 13 years of age. Defendant was informed that plaintiff had stolen some small articles from a notion stand in front of defendant's place of business, whereupon defendant, in company with his informant, started out in pursuit of plaintiff, and caught him about a block away, and the plaintiff's testimony tended to show that plaintiff was caught by the throat, thrown down, kneeled upon, beaten, and bruised by defendant.

Plaintiff testified that—

"After he [defendant] had hold of me he brought me over to the policeman, and he told the policeman to arrest me, and these men that were there [the by-standers], they told him not to arrest me, but to arrest him."

Objection was made to this testimony, but counsel for plaintiff continued:

" *Q* You said some other men spoke to the policeman. What other men? Do you remember?

" *A.* Yes, sir; there were some of them that gave me their names that they would be witnesses. They are in here now, I guess. They says to arrest him,—to arrest Mr. Freund.

" *Q.* Mr. Freund wanted you arrested?

" *A.* Yes, sir.

" *Q.* And those people were strangers to you, were they?

" *A.* Yes, sir.

" *Q.* And they told the policeman to arrest Mr. Freund?

" *A.* Yes, sir.

" *Q.* Why did they tell the policeman—what did they

say—what reason did they give the policeman why he should arrest Mr. Freund?

"*A.* For hitting me."

Another witness testified as follows:

"It made me very angry to see a man of the age and the strength of that man to hold a little boy the way he did there; and quite a crowd collected there; and a policeman came up, and the boy stated his story as best he could in his excited manner to the policeman, and the policeman took the name, I think, of the little boy, and let him go; and I, in company with two other gentlemen, took the little boy in charge. We went down to Judge Robinson, and we advised the little boy to utter a complaint for criminal assault. * * * * * *

"*Q.* I want to know which was the first overture,—the statement that was made to the policeman; whether it was by the outsiders,—the spectators there desiring to have Mr. Freund arrested, and then he claiming to the policeman that he ought to arrest the boy."

[Objection was then made, and exception taken, and counsel for plaintiff continued.]

"*Q.* Tell us about that as near as you may.

"*A.* I could not say as to which made the first overtures. I would not undertake to state as to that.

"*Q.* But the fact is, that both these things were contemplated, were they not?

"*A.* Both of them; yes, sir.

"*Q.* Mr. Freund desired to have the boy arrested, and the people there desired to have Mr. Freund arrested?

"*A.* Yes, sir.

"*Q.* What did they want Mr. Freund arrested for?

"*A.* For abusing the boy. * * * * *

"*Q.* Did you speak to Mr. Freund at that time at all, to ask why he was doing this, or whether any protest, or what did you say?

"*A.* I entered a protest; yes, sir.

"*Q.* What did you tell him?

"*A.* I told him he ought to be ashamed of himself, and if he would strike a boy like that of mine I would break his neck.

"*Q.* What reply, if anything, did Mr. Freund make to that?

"*A.* I could not tell you. I don't remember.

"*Q.* State what the fact was,—whether the people in

the vicinity—whether there was quite a crowd congregated?

"*A.* Yes, sir; there was quite a crowd congregated.

"*Q.* State whether there were threats of personal violence to Mr. Freund engaged in, right in his hearing?

"*A.* They were; yes, sir."

This testimony was clearly inadmissible and prejudicial. The last witness was permitted to give not only his own opinion and conclusion, but also the opinions and conclusions of other by-standers, who were not sworn, and whose identity was not disclosed. Neither his own conclusions nor those of the other on-lookers were material. Nor was it competent to allow the witness to testify as to the effect upon his own mind of the assault, or what " the people there desired," or that " threats of personal violence " were made by others. The judgment of a crowd is not generally so accurate that evidence of its clamor can be admitted, unless the crowd and the party sought to be charged are acting in concert. It was entirely proper to show by those present what was said or done by either party during the scuffle, but it was clearly improper to admit the comments volunteered by the by-standers, expressive of their partisanship. The opinion of the crowd cannot be substituted for that of the jury. See *Detroit & Milwaukee R. R. Co. v. Van Steinburg,* 17 Mich. 99, 107. For this error the judgment must be reversed.

The point is here made that proofs that the injuries received had been followed by epilepsy, which would, in all probability, be chronic or permanent, were not admissible under the declaration, but the testimony was admitted without objection on that ground, and for the purposes of that trial the point must be deemed to have been waived. *Merkle v. Bennington,* 68 Mich. 133. Inasmuch as a new trial will be had, it is proper to say that

under objection properly made, such proofs were not admissible. The object of a special count is to apprise the defendant of what he must be prepared to meet. Neither count of the declaration contains a suggestion of epileptic results or permanent injuries. Indeed, the third count indicates that the "wounds, lameness, and disorders" resulting are curable. Epilepsy, irritation of the spinal cord, a depression of the inner table of the skull, and permanent mental disorder, cannot be said to be the ordinary results of an assault and battery, such as is set forth in the declaration here. Damages which are peculiar to the case, and spring from exceptional circumstances, must be specially alleged, or they cannot be recovered. *Brink v. Freoff*, 44 Mich. 69, 72. The declaration here gives no notice of any such claim as is made by the proofs.

It is urged, however, that the defendant requested the court to charge that "the plaintiff is not, under the pleadings in this case, entitled to recover," and the court refused so to instruct the jury. The court was right. The objection now made to the declaration goes to the extent of the recovery only. Defendant requested the court to instruct the jury as follows:

"That if the jury find that the epileptic characteristics alleged to exist are due to any other cause than the injury alleged, and that the defendant at the time of the injury was employing no more force than, on the whole, was reasonable and necessary, the plaintiff cannot recover"

This request, in the absence of any specific objection to the declaration on the ground now stated, practically conceded that, if epileptic characteristics were due to the assault and battery alleged, plaintiff could recover therefor under the declaration and proofs, and that it was

entirely proper for the jury to determine the question. *Brzezinski v. Tierney*, 22 Atl. Rep. (Conn.) 486.

Judgment is reversed, and a new trial ordered, with costs to defendant.

The other Justices concurred.