## KAISER v. DETROIT UNITED RAILWAY.

1. EVIDENCE—ADMISSIONS—FOUNDATION FOR TESTIMONY ON TRIAL OF SEPARATE ACTION.

    The official stenographer's minutes of testimony taken in another cause, not sworn to by the stenographer, were not admissible in evidence to show that the president and general manager of defendant admitted that defendant, at a time several years previous to plaintiff's injury, owned the street car line on which plaintiff was injured.

2. SAME—STREET RAILWAYS—INCOMPETENCY.

    It was prejudicial error to admit such evidence, aside from which the showing as to ownership was meager and inferential, and to refer to it in the charge to the jury as an admission of defendant's officers which the jury might consider on the question of its ownership of the road.

3. DAMAGES—PERMANENT INJURIES—DECLARATION.

    A claim for permanent injuries must be plainly averred in the declaration either in exact words or by an equivalent statement of facts.

4. SAME.

    While it was permissible, under plaintiff's declaration, which did not aver prospective pain or permanent injury, to show the extent of his suffering and of his injuries at the time of the trial, the court erred in permitting the jury to find damages for permanent or future suffering, annoyance, or anxiety.

Error to Wayne; Hosmer, J. Submitted April 13, 1911. (Docket No. 58.) Reargued October 9, 1911. Decided November 3, 1911.

Case by Christopher E. Kaiser against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed.

*Corliss, Leete & Joslyn* and *Brennan, Donnelly & Van De Mark* (*Benjamin S. Pagel,* of counsel), for appellant.

*William M. Mertz* and *R. M. Dalton,* for appellee.

STEERE, J. Christopher E. Kaiser, the plaintiff, sued the Detroit United Railway to recover damages for injuries sustained by being assaulted and forcibly thrown from a moving car by one of defendant's conductors. A verdict was rendered in favor of the plaintiff for $2,000, and judgment followed on November 5, 1909. A motion for a new trial was denied, and the case is in this court on a writ of error.

The chief contentions of counsel for appellant are (1) that a verdict should have been directed in favor of the defendant for want of any competent testimony tending to show that defendant owned or operated the car on which plaintiff was assaulted; (2) that certain testimony offered to show such to be the fact was erroneously admitted; and (3) that the charge of the court relating to the measure of damages was erroneous. Error is also alleged as to statements made by, and conduct of, plaintiff's counsel during the trial; and the refusal of the court, after reading certain of defendant's requests in the presence of the jury, to give them as a part of his charge.

Touching the first and second allegations of error above referred to, it appears that during the introduction of plaintiff's testimony defendant's counsel, in answer to an inquiry by the court, stated they could not concede that

the defendant owned or operated the car from which it was claimed plaintiff was thrown. He said further as follows:

"We simply contend that these two corporations are separate and distinct; that the Rapid Railway is in no way connected with the D. U. R. Now, if Mr. Mertz attempts to hold the Detroit United Railway, it is up to him to produce proof, * * * but it is not within our province to do that. It is up to Mr. Mertz, if there is any such proof. We cannot produce what we have not got. We say they are distinct."

Plaintiff's counsel, in an effort to produce such proof, stated to the court that Messrs. Hutchins and Brooks, the president and general manager of defendant, were absent from the State, and for that reason he wished to offer, and have read by the stenographer who took it, their testimony given in a former case, entitled "*Mathzeit* v. *Detroit United Railway.*" He claimed that their absence in another State attending a ball game had been admitted by defendant's counsel. Thereupon he called as a witness Edward Carlisle, who was sworn, and testified as follows:

"I am one of the reporters of the circuit court for the county of Wayne, and I took the testimony in the case of *Catherine Mathzeit* v. *Detroit United Railway.* I have my notes upstairs, and will produce them. The testimony in the *Mathzeit Case* I now have, including all the witnesses. That is, pertaining to the ownership or the relationship between the Detroit Railway and the Rapid Railway system."

Plaintiff's counsel then asked that everything pertaining to that relationship be read. This was duly objected to as incompetent, irrelevant, and immaterial, and that the people whose testimony it was proposed to read were living and should be produced. The court allowed the testimony to be read.

The record fails to disclose any admission that the witnesses whose testimony was read were absent from the State.

The suit in which this testimony, which the stenographer then read, was originally taken, was tried in 1908. It related to conditions existing in 1904–5. It was not between the same parties and involved a separate and distinct issue. The transactions in controversy in that case were different from those in the case at bar, and the conditions as to ownership and management were not shown to remain the same. The stenographer who took and read this testimony did not swear either from memory or from his notes that it was a true and correct reproduction of the evidence given at the trial in the other case. His notes were not, therefore, vested with the character of sworn minutes. No proper foundation was laid for the admission of such testimony. *Howard* v. *Patrick*, 38 Mich. 795; *Kellogg* v. *Secord*, 42 Mich. 318 (3 N. W. 868); *Edwards* v. *Heuer*, 46 Mich. 95 (8 N. W. 717); *Toohey* v. *Plummer*, 69 Mich. 345 (37 N. W. 297); *Barker* v. *Hebbard*, 81 Mich. 267 (45 N. W. 964).

This testimony, which constitutes many pages in the record, having been allowed in evidence and read to the jury, the court in his charge particularly called attention to it as containing important admissions made against the defendant by its officers, saying to them:

"Now, gentlemen of the jury, that was not read as testimony. Of course, gentlemen, the testimony which has been taken in another case between other parties cannot be read in this case as testimony. The only thing that I admitted that testimony for, gentlemen of the jury, that was taken in the other case, was in the nature of an admission on behalf of the executive officers of the Detroit United Railway. There was some things in that testimony which Mr. Mertz conceded to be in the nature of an admission with reference to the operation of the road, and it is for that reason alone that that testimony has been admitted into this case. * * * You have heard the testimony or the lack of testimony with reference to that as to any change of control, and I think from that and from the testimony and from the statements of the officers of the corporation which has been read to you, it is within your province, gentlemen of the jury, to say that the De-

troit United Railway were in the operation of the car at the time that the plaintiff was ejected therefrom." ·

Aside from this incompetent testimony, the evidence is very meager, remote, and vaguely inferential on the question of defendant's ownership or control of the car from which the plaintiff was claimed to have been ejected, and the conclusion is inevitable that this objectionable testimony entered into the deliberations of the jury, was considered by them, and influenced their verdict. The admission of such incompetent testimony, followed by instructions from the court as to its weight and bearing, was prejudicial error.

The only other serious question we deem it necessary to consider is the charge of the court relative to damages for permanent injury, an element not declared upon, and of which it is claimed there is no evidence.

Plaintiff's declaration contains two counts; the nature and extent of his injuries being stated substantially the same in each. The first is as follows:

" By means whereof one of plaintiff's feet became and was sprained, and his back badly hurt and wrenched, and the said plaintiff became and was injured about the heart, and his head severely jarred, and the said plaintiff was otherwise bruised, wounded, and injured; and also by means of the premises the plaintiff became and was sick, sore, lame, and disordered, and suffered violent and excruciating pain in and about the region of the heart, and became and was a nervous wreck, and was afflicted with severe attacks of dizziness, and so remained and continued for a long space of time, to wit, hitherto—"

Neither count alleges that the injuries were permanent. To maintain the issue on his part, plaintiff introduced testimony tending to show that on the evening of October 21, 1907, he took a car called the Detroit United Railway Rapid Car to Mt. Clemens down at the waiting room on Griswold street, to ride about 10 miles out on the Gratiot Road to a station called Hund, near where he resided. When his station was reached, he had difficulty in getting to the rear platform to alight owing to the car being crowded,

and it again started before he could get off. He requested the conductor to stop and let him off, and not take him to the next station. Some altercation followed, resulting in the conductor's kicking him in the breast as he stood on the lower step of the rear platform, causing him to fall from the car while it was in motion, and hurting him seriously. He described the immediate effect of the assault and fall as follows:

"When I got up, I was sore all through, could hardly move from the place. My face was full of sand, and I could not see for sand in my eyes. My head was hurt, my back was sprained, and my left foot was sprained. I could just about get to Hund. The next day my foot was swollen so bad, and had fever in it, and I could not sleep nights for the pain. The foot bothered me for six months. I was not able to work. I was not laid up in bed."

As to the extent and continuance of his injuries, he testified:

"I tried to doctor my foot with liniment. It seemed to get worse; also my back. About six weeks after I went to see a doctor. I felt I was getting broke down, instead of getting better. Besides my foot paining me, I had pain in my heart. My head bothered me. I could not sleep at all. Sometimes awake all night until morning. Sometimes two or three nights. Waked up trembling as though electricity was running through my nerves. This condition has never left me. If I do not do anything, do not work at all, it is not so bad, but the least little bit of excitement of using my muscles a trifle puts me in that condition. I never suffered any of those troubles before the accident."

He also further testified that he was over the trouble with his lame foot, but was not otherwise fully recovered at the time of the trial, and was suffering from nervous debility, pain around the heart, headache, and sleeplessness.

The court charged the jury on the measure of damages as follows:

"If the plaintiff is entitled to compensation, *  *  *

he is entitled to damages for his injuries, past, present, and prospective. The elements that the jury are entitled to take into consideration consist of all the injuries complained of in the way of personal inconvenience, sickness, which the plaintiff enumerated—bodily and mental suffering, permanent annoyance, if you find permanent annoyance, which is liable to be caused by the injury, if any, and such loss or damage that the plaintiff is shown to have suffered. * * * You are at liberty to consider, not only bodily pain, past as well as future, but the mental suffering, anxiety, and suspense."

The rule is well settled that a claim for permanent injury must be plainly averred in the declaration, either in exact words or by an equivalent statement of facts and circumstances from which such result naturally and necessarily follows. Where a statement of the nature of the injury contains in it allegations which indicate it must necessarily be permanent, like the loss of an arm, leg, or eye, there can be no misunderstanding or surprise, and in such cases permanent injury would be sufficiently pleaded; but in the case at bar the injuries stated in the declaration are not such as to be necessarily permanent, and there is no averment in exact language that such is the case. Neither does plaintiff's testimony preclude hope and possibility of future recovery. That all the circumstances attending willful trespass may be given in evidence before the jury and considered by them in estimating damages is a familiar principle. It was competent in this case to show that the plaintiff was yet suffering from his injuries at the time of the trial, as bearing on the severity and extent of the same, but in the absence of proper averments in the declaration there can be no recovery for permanent injuries, and it was error for the court to charge the jury that damages could be awarded therefor. Baldwin on Personal Injuries, § 613; *Shadock* v. *Plank Road Co.*, 79 Mich. 7 (44 N. W. 158); *Kuhn* v. *Freund*, 87 Mich. 545 (49 N. W. 867); *French* v. *Wilkinson*, 93 Mich. 322 (53 N. W. 530); *Montgomery* v. *Railway Co.*, 103 Mich. 46 (61 N. W. 543, 29 L. R. A. 287). By rea-

son of the errors referred to, which in the opinion of the court were prejudicial, the defendant is entitled to a retrial of the case.

As the other errors alleged are not likely to arise on a new trial, no useful purpose will be served by reviewing them.

The case is reversed and a new trial ordered.

OSTRANDER, C. J., and BIRD, MOORE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.