HEWITT *v.* MORLEY.

111    187
139    ³317
f140    3

1. SLANDER—VARIANCE BETWEEN PLEADINGS AND PROOFS—EVIDENCE.

Evidence that the defendant in an action for slander stated to witnesses that he was confident that plaintiff had taken money and certain other articles, and made other statements fairly imputing a charge of larceny, supplemented by his admission that he intended to convey the idea that plaintiff had stolen, will support a verdict for the plaintiff, although the words proved to have been uttered are slightly different from those set out in the declaration.

2. SAME—PRIVILEGED COMMUNICATION—QUESTION FOR JURY.

Whether the statements of defendant were for the purpose of making an investigation which he had a right to make, or of imparting information to one who had a right to know, and were therefore privileged, is a question for the jury; under proper instructions.

3. APPEAL—FORM OF VERDICT—OBJECTION NOT RAISED BELOW.

An objection that the verdict in an action for slander failed to specify the amount awarded for damages to feelings separately from the amount awarded for other damages, as required by Act No. 216, Pub. Acts 1895, § 2, comes too late, where the case was pending when the act went into effect, and the point is raised for the first time in a supplemental brief.

Error to Berrien; Coolidge, J.   Submitted October 22, 1896.   Decided December 18, 1896.

Case by Ida Hewitt against Alvin Morley for slander. From a judgment for plaintiff, defendant brings error. Affirmed.

*Edward Bacon*, for appellant.

*James O'Hara*, for appellee.

MOORE, J.   This is an action for slander.   There are several counts in the declaration.   Omitting the legal verbiage, the allegations are as follows:

*First count:* "She (plaintiff meaning) is a thief." "She stole five dollars from my hired man." "She stole money from my children." "She stole money from my wife." "She stole sugar and soap." "Ida Hewitt (plaintiff meaning) took five dollars from my hired man, two dollars from my wife, and some money from my children, —(meaning and intending thereby to charge the plaintiff with the crime of larceny)."

The second count charged the defamatory words to be:

"I have good proof of Ida Hewitt taking small articles, such as sugar and soap."

The third count stated the defamatory words to be:

"I am satisfied that Ida Hewitt took five dollars belonging to Allie Sober out of my house.   I am also satisfied that she took money belonging to our children."

Another count charged the defamatory words to be:

"I am satisfied in my own mind that Ida Hewitt stole five dollars from my hired man, and took money belonging to my little girl."

In another count the defamatory words were:

"You had better keep quite close watch of Ida Hewitt, for, while she was working at our place, I am satisfied she took five dollars belonging to Allie Sober, two dollars from my wife, and some money belonging to our children."

In the declaration the necessary words of innuendo and colloquium were inserted to make the declaration good pleading. The defendant pleaded the general issue. The jury rendered a verdict for $300 in favor of the plaintiff, and defendant appeals. Upwards of 40 errors are assigned, but it will not be necessary to discuss all of them.

It is claimed that there is a variance between the pleadings and the proofs, and such a failure of the proofs to establish a case that a verdict should have been directed for the defendant. The record shows this conversation between defendant and Mrs. Markham:

" He came into the store one afternoon, and wanted to know if I was aware that the girl we had was light-fingered. I told him I was not, and he said that they had missed five dollars belonging to the hired man, and two dollars from his wife's pocketbook, and some change belonging to the children, and some pocket handkerchiefs, and they felt confident Ida had taken them."

Miss Hewitt was at this time in the employ of the witness.

Dr. Sober testified:

"He came into my field where I was at work, and told me he was satisfied in his own mind that Miss Hewitt took the five dollars from his hired man, and some nickels from his little girl."

In reply to a question, the witness stated:

" He might have said she stole the five dollars, or he might have said she took the five dollars. It all appeared to me the same, right then and there."

Miss Hewitt was not in the employ of Dr. Sober, but the witness was an uncle of the hired man. In the same conversation defendant stated that he did not wish to injure Miss Hewitt, and that he wanted to find evidence of her having taken the things. He told Miss Kempton he thought Miss Hewitt had taken things from the house, —handkerchiefs, and small change from the children. He said he had good proof that she had taken them. He told Mr. Markham, in whose employ Miss Hewitt was at

the time, that his hired man had lost five dollars; that five dollars had been taken from him, and he suspected Ida Hewitt of taking it, as she was working for him at that time; also some money belonging to the children,— that he had reason to believe she had taken it.  He said to Mr. Markham that he told him as a friend, to put him upon his guard, knowing that she was in his employ, and that he left her in the store, and asked him not to repeat it.   Other evidence of a like character was introduced, which it will not be necessary to insert here.

The defendant testified that he told her father:

"'Mr. Hewitt, I have said nothing about Ida but what I will say to her or will say to you; nothing but what I believe to be true.   We have lost these things from our house.   I believe Ida is the guilty person.   I have reasons to believe so.   I have reasons that justify me in this belief, and I think I would be justified before any jury in Berrien county, if the facts are found.'   Then he says, 'If you thought Ida took the money, why didn't you get a search warrant, and come and see if you couldn't find it?'   I said, 'That would be a nice way to ascertain,—to search for a five-dollar bill!'"

During the progress of the cross-examination of the defendant, he said to the court that he intended to convey the idea that Miss Hewitt stole the articles.   Any one reading this testimony would have the right to infer that Mr. Morley intended to charge Miss Hewitt with the larceny of the things mentioned by him.   That would be a fair conclusion from the language used.   There was no such variance between the pleadings and proofs, and no such failure of proof, as would justify the court in directing a verdict for the defendant.   *Wiest* v. *Luyendyk*, 73 Mich. 665; 5 Wait, Act. & Def. 731.

It is the claim of the defendant that what he said was privileged; that it was his duty to say it; and that what he said was either for the purpose of making an investigation he had a right to make, or to impart information to one who had a right to know.   The trial judge allowed full latitude in the admission of testimony bearing upon

this feature of the defense.    The circuit judge charged the jury at the request of the defendant:

" Where a person is so situated that it becomes right, in the interests of society, that he should tell to a third person certain facts, then, if he, *bona fide* and without malice, does tell them, it is a privileged communication.

"If the money or goods of the person to whom he [the defendant] speaks would be in great and obvious danger of being stolen or destroyed, he may volunteer information to those in danger, or to their master, though he be nòt himself personally concerned.    So, too, it appears that the defendant may, without being applied to for the information, acquaint a master with the misconduct of his servants, if instances have come under the especial notice of the defendant which have been concealed from the master's eye.

"It is necessary, further, that circumstances should be present to his [the defendant's] mind which reasonably impose on him a duty to make such a statement.    If such circumstances exist, the statement is privileged, although it may prove to be untrue.    It is not necessary that, before making such a statement, the defendant should have thoroughly investigated the reports which have reached him.    Hearsay is sufficient, reasonable, and probable cause, in the absence of malice, unless the defendant ought, for any reason, to have known that his informant was unreliable, and his story undeserving of belief.    And, lastly, the defendant must make the statement under an honest sense of duty, desiring to serve the person most concerned, and not for any malicious or self-seeking motive.

" An important question in this case is this: Did the defendant honestly believe it to be his duty to make the communication complained of, and did he do so under a sense of duty?    *    *    *    The jury must place themselves in the position of the defendant at the time these suspicious circumstances were brought to his knowlege,— when first the question arose in his mind, ' Ought I not to inform my neighbor?'    It may well be that another man would have said, ' It is no concern of mine,' and would have done nothing, but that does not prove that the defendant was wrong in acting as he did.    *    *    *    But the jury should find for the defendant if they are satisfied that he both honestly felt, and had reasonable grounds for feeling, that he could not conscientiously

allow the person to whom he made the communication to continue in secure ignorance, and honestly felt that he must communicate to such person that which he was much concerned to know.   *   *   *

"If you shall find that the defendant had no malice—that is, hatred or ill will—against the plaintiff, and that he had just cause or excuse for endeavoring to detect the plaintiff in the unlawful taking of his property, or that of his hired man, and that he made any particular charge or accusation simply to detect her, if guilty, then your verdict must be for the defendant, so far as any particular charge or accusation is concerned.   *   *   *

"If the jury find that any slanderous communication that the defendant made to any neighbor of his was made under the belief, justified by the circumstances that had come to his knowledge, that his duty to the person to whom he made the communication required him to make the same, because of confidential relations, then the communication was privileged, and the jury ought not, because thereof, to find the defendant guilty."

The defendant has no reason to complain of this statement of the law.   *Moore* v. *Thompson*, 92 Mich. 504.

It is urged in defendant's supplementary brief that the verdict cannot stand because it does not comply with the provisions of section 2, Act No. 216, Pub. Acts 1895, which provides that—

"In awarding damages to the plaintiff in any suit brought for the recovery of damages for libel or slander in this State, the jury shall in all cases specify the amount awarded for damages to feelings separately from the amount awarded for other damages mentioned in the foregoing section."

This act did not take effect until after this suit was begun, but it is urged that the act is a procedure act, without any saving clause, and that pending litigation would be affected by it. The provisions of the act were not called to the attention of the trial court, and there is no reference made to it, nor any argument based upon it, in the original brief filed by counsel. There is everything to indicate that the provisions of the new act were unknown both to counsel and the court at the time of the

trial, and when the original brief was prepared by defendant's counsel, and we think it too late now to raise the question in a supplemental brief. *Black* v. *Dawson*, 82 Mich. 485; *Shippy* v. *Village of Au Sable*, 85 Mich. 280; *Ashman* v. *Railroad Co.*, 90 Mich. 567; *Lacas* v. *Railway Co.*, 92 Mich. 412.

Judgment is affirmed.

The other Justices concurred.