1. APPEAL AND ERROR—REVIEW—QUESTIONS CONSIDERED.
   Only such points as counsel make and rely upon for reversal in their original brief will be considered by this court in disposing of a case.

2. NOTARIES — BONDS — LIABILITY — NEGLIGENCE — TAKING ACKNOWLEDGMENT OF IMPOSTOR.
   In an action on a notarial bond for damages resulting from the notary's taking the acknowledgment of an impostor to a real-estate mortgage, evidence examined, and *held*, that the direction of a verdict for plaintiff was properly refused.

Error to Sanilac; Beach, J. Submitted January 5, 1905. (Docket No. 12.) Decided March 14, 1905.

Debt by the People of the State of Michigan, for the use and benefit of William W. Cook, against Sidney S. Cole, principal, and John H. Farley, surety, upon a notary's bond. There was judgment for defendants, and plaintiff brings error. Affirmed.

*C. F. Gates* (*Wilford Macklem* and *S. L. Kilbourne*, of counsel), for appellant.
*William H. Aitkin*, for appellees.

MOORE, C. J. This is an action brought by the plaintiff upon the notarial bond given by defendant Sidney S. Cole, as principal, and the defendant John H. Farley, as surety.

The condition of the bond is "that if the said Sidney S. Cole shall duly and faithfully discharge the duties of his said office, without fraud, then this obligation to be void, otherwise to be and remain in full force and virtue."

The breach charged is for taking the acknowledgment

of a mortgage signed by one Paul Davis under the name of Peter M. Carroll, which reads:

"STATE OF MICHIGAN, ⎫ ss.
　County of Sanilac. ⎭

"Before me, the subscriber, Sidney S. Cole, a notary public in and for said county, this 15th day of May, A. D. 1897, personally appeared Peter M. Carroll, to me known to be the same person described in and who executed the above mortgage and who acknowledged the same to be his free act and deed.

"SIDNEY S. COLE,
　"Notary Public."

Mr. Cook is a farmer living a few miles out from Croswell, who sometimes loaned money through Mr. Cole, who was a lawyer and notary public living in 1897 at Croswell. The acquaintance between Mr. Cook and Mr. Cole ran through a series of years. It is the claim of Mr. Cook that on the evening of May 14th a man who was a stranger to him presented to him a note in the handwriting of Mr. Cole. He testified the note was lost, and he and his wife were permitted to give oral testimony of its contents, and claimed it read as follows:

"Will, this is Peter M. Carroll, of Detroit, is up wishing to make a loan on his farm northwest of Peck. If you have the money come up in the morning as Mr. Carroll wants to go away on the morning train. I have examined the abstract and find it O. K. See Thomas Dumphey as to value of the farm.

"S. S. COLE."

Mr. Cook testified that, supposing the man was Mr. Carroll, he agreed to make him a loan if the title was all right; that the next morning he went to the office of Mr. Cook, and found the man he supposed to be Mr. Carroll there; that a mortgage was made out and acknowledged before Mr. Cole; and that, relying upon the truth of the statement in the acknowledgment, he let the mortgagor have the money. Later it turned out that the man was not Mr. Carroll, but one Davis, who was later convicted of forgery and sent to State prison.

Upon the trial of this case it was claimed that Mr. Cole did not, on the morning when the mortgage was drawn, introduce Mr. Dumphey, who was in the office, to the man who claimed to be Carroll, for the reason that Dumphey knew Carroll. It was also claimed that Cole sent Dumphey out of the office to see Cook, so that Cole, Cook, Dumphey, and the man claiming to be Carroll, should not all be together. Mrs. Malaney was also sworn on the part of the plaintiff to show that Cole had known Davis for years at the time this mortgage was drawn.

A further claim of plaintiff may be drawn from the first request to charge, which reads as follows:

" The undisputed evidence in this case and the admission of the defendant shows that Sidney S. Cole was guilty of gross negligence in the taking of the acknowledgment of Paul Davis to the mortgage in question, and your verdict must be for the plaintiff."

The claim of defendant is stated in the brief, as follows:

" Cook was a farmer and dealer in mortgage loans. Cole was a country lawyer and notary public. Davis was an impostor. Davis, representing himself to be Carroll, called upon Cole; talked about loans; represented that he had an abstract of his farm at the bank, sent there by the abstractors to collect a balance due. Davis left the balance due on abstract with Cole to enable him to obtain and examine same. As a lawyer, Mr Cole examined abstracts and made out papers for parties who loaned money in that vicinity, and gave Davis the names of some of these parties, and among them Cook, whom Davis claimed to know, and showed a general acquaintance in the neighborhood. Cole did not introduce Davis to Cook, nor to any of the money loaners he mentioned. This question was submitted to the jury by the court in his instructions, as follows:
" ' One principal question litigated in the testimony was as to whether Mr. Cole sent Mr. Davis to Mr. Cook with the letter. That is an important matter in this case. On the part of Mr. Cook and his wife, they claim that the letter was sent, and give what they claim to be the substance of the contents. On the part of Mr. Cole, he denies knowledge of sending such letter, and that he did not directly

send Davis to Mr. Cook. You will determine that question for yourselves.'

"Cook bargained with Davis at his home, and in the absence of Cole, and agreed to loan the money when he was satisfied that the security was ample, and that the abstract showed title in Carroll. This appears also by Mr. Cook's testimony:

" 'Q. Then the only thing that occurred to your mind at that time was this: That, if you were satisfied as to the valuation of the land, you would make the loan. Is that correct?

" 'A. Yes.

" 'Q. And when you went to Croswell you satisfied yourself as to that, did you not—as to the value of the land?

" 'A. Yes.

" 'Q. Which was the only thing left undetermined?

" 'A. Yes.

" 'Q. And when you did, you concluded to make the loan, didn't you?

" 'A. I accepted the loan when it was made.

" 'Q. After you satisfied yourself as to the valuation? That is true, isn't it?

" 'A. Yes; I accepted it.

" 'Q. And the individual, or his identity, or whether he was impersonating some one else, never occurred to your mind, at any stage of the game, did it?

" 'A. No, sir.

" 'Q. That is correct, now, is it?

" 'A. No; I never wanted to investigate; never had a doubt.

" 'Q. Do you know how Mr. Cole came to draw the mortgage exactly as you wanted it?

" 'A. Mr. Cole knew that if he loaned any money for me it was eight per cent., and not less than five years, generally.

" 'Q. How did he know about this particular transaction?

" 'A. I can't say.

" 'Q. You don't know?

" 'A. Unless it was that it was the Mr. Davis told him.

" 'Q. The only way that you know is that Davis came back and told him what you had agreed on?

" 'A. Yes.

" 'Q. And the mortgage was drawn according to your agreement at the house?

" 'A. That is right.'

" Cole did not know until the morning that the mortgage was executed that Cook would make the loan, and did not complete the execution of the mortgage until told to do so by Mr. Cook. Cook relied upon Mr. Cole's judgment as an attorney as to whether the title shown by the abstract was in Carroll. And he relied upon his own judgment as to all other matters connected with the loan. This is true as to all other loans made by Cook, as clearly shown by Cole's and Cook's testimony."

It is their claim that:

"The situation is no different than if Mr. Cook and Mr. Carroll together had called at the office of Mr. Cole for the first time, and Mr. Cook saying:

" 'Mr. Cole, Mr. Carroll and I have agreed upon a loan, and I am going to let him have $550 for two years if you find the abstract comes down to Peter M. Carroll.'

"Would Mr. Cole under such circumstances be liable, should it turn out that this man was an impostor? If so, the practical result of everyday life will be that a notary public and his sureties will be guarantors of loans, in addition to the security agreed upon between the parties themselves. Mr. Cook did not rely on the certificate, but relied upon himself in everything except the question of abstract. Indeed, the bargain was made long before he saw Mr. Cole, or ever the certificate was executed."

The plaintiff preferred eight requests to charge, six of which were requests for a directed verdict. The trial judge declined to direct a verdict, and the jury found in favor of defendant.

In the original brief of plaintiff it is said:

"As the testimony in the case shows that the defendant Cole used no caution whatever, made no inquiries, and was guilty of gross negligence, we contend that the first and third requests to charge should have been given; and, as this court has the exact figures of the amount of judgment that plaintiff is entitled to, that the case should be reversed, and a judgment entered here for the plaintiff for $779.01, and the additional interest running to the time of judgment here, with cost of both courts."

Each of requests 1 and 3 directed a verdict in favor of plaintiff. In the supplemental brief of counsel some other

questions are discussed.   Supreme Court Rule 40 provides that the original brief shall contain a statement of the errors upon which counsel rely.   It has been held that only such points as counsel make and rely upon for reversal in their original brief will be considered by the court in disposing of the case.   *Black* v. *Dawson*, 82 Mich. 485; *Shippy* v. *Village of Au Sable*, 85 Mich. 280; *Ashman* v. *Railroad Co.*, 90 Mich. 567; *Lacas* v. *Railway Co.*, 92 Mich. 412; *Hewitt* v. *Morley*, 111 Mich. 187.

In *Aldine Press* v. *Estes*, 75 Mich. 100, it was held that, before a court should direct a verdict for a plaintiff, he must make a case that has no matter of fact left open. See, also, *Hagan* v. *Railroad Co.*, 86 Mich. 615; *McDonald* v. *Ortman*, 88 Mich. 645.   Under the testimony in this case, we do not think it would have been proper for the trial court to have directed a verdict in favor of plaintiff.

Judgment is affirmed.

McALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred.