FERGUSON *v.* WILSON.

1. APPEAL—ASSIGNMENTS OF ERROR—WAIVER—BRIEFS OF COUN-
SEL.

 Assignments of error not mentioned in appellant's brief will be
treated as waived.

2. SAME—FORM OF BRIEF—COURT RULES.

 The nonobservance of Supreme Court Rule No. 40, prescribing
the contents and arrangement of appellant's brief, is criti-
cised.

3. SUITS—ABATEMENT AND REVIVAL—FORMAL ORDER.

 The fact that an order reviving a suit in the name of plaintiff's
administrator was signed by the attorneys, instead of by the
court, is immaterial, where defendant afterwards pleaded the
general issue without raising the objection, and, from the
showing made, the court would have granted the order as of
course.

4. CHATTEL MORTGAGES—AFTER-ACQUIRED PROPERTY.

 A chattel mortgage securing the payment of a specified sum
annually for a number of years, which covers specified chat-
tels, and provides that it shall also cover "all other personal
property that may be owned or acquired during such years,"
is void, as to subsequent good-faith purchasers for attaching
creditors, so far as it attempts to create a lien upon after-
acquired property having no connection with that owned by
the mortgagor at the time of the giving of the mortgage.

Error to Sanilac; Beach, J. Submitted October 25,
1899. Decided December 2, 1899.

Trover by James F. Ferguson, administrator of the
estate of Charles Ferguson, deceased, against Henry W.
Wilson. From a judgment for plaintiff, defendant brings
error. Affirmed.

*F. E. Burton* and *E. C. Babcock*, for appellant.

*C. F. Gates* and *D. S. McClure*, for appellee.

Long, J. There are twenty assignments of error in this case. None of them are, however, mentioned in the brief of the appellant, except, perhaps, two. The ones not mentioned will be treated as waived, under the rule in *Black* v. *Dawson*, 82 Mich. 485. Supreme Court Rule No. 40 provides that the appellant, in his statement of facts, and distinct from the argument, shall state the errors upon which he relies, the questions involved, and the manner in which they are raised. This rule was adopted to save the time of the court in going through voluminous records to ascertain the questions involved and the errors relied upon, by putting this burden upon counsel for appellant. It is observed that many of the attorneys do not live up to this rule in full, as they very frequently mix up the facts with arguments and their conclusions drawn from the facts. No attempt has been made by appellant in this case to follow this rule. While we shall examine the case and determine the questions which we think are involved, it must not be taken as a precedent for future cases.

This suit was brought in trover by the administrator of the estate of Charles Ferguson, deceased, to recover the value of certain personal property. The cause was tried by a jury, who returned a verdict in favor of plaintiff. Defendant brings error.

1. It is contended that it developed on the trial, for the first time, that the plaintiff was acting as administrator for Charles Ferguson. From what we gather from the record, it appears that the suit was commenced in the lifetime of Charles Ferguson; that after his death it was revived in the name of his administrator, and a new declaration filed, to which the defendant pleaded the general issue only. The record shows the proceedings from the probate court appointing the plaintiff as administrator. While the order that the suit be revived in the name of the administrator appears to have been made and signed by the attorneys in the case, and not by the court, it is not shown that any objection was taken to the form of it when

the declaration was filed, but that a plea of general issue was filed. On the trial, when the plaintiff sought to make his case, the objection was first made that the testimony could not be received because the suit had not been revived. This was overruled. While the order should have been signed by the court or entered in the court journal, instead of by the attorneys and entered in the book of common rules, yet there was no error in over-ruling the objection. It was shown by the records that Charles Ferguson had deceased, and that the plaintiff had been appointed administrator; and the order was one which the court would have granted, of course, upon this showing. The case will be treated as though the court had then and there granted the order.

2. Plaintiff's claim to the property in controversy arises:

1. Under a certain chattel mortgage given by one George Wiggins to Charles Ferguson, plaintiff's intestate, on November 1, 1893, and filed in the town clerk's office, November 6, 1893, the consideration mentioned being $150, and covering one bay horse, one gray horse, one binder, one mower, five yearlings, and one calf.

2. Under a chattel mortgage given by Wiggins to Charles Ferguson, October 27, 1893, and filed in the town clerk's office, November 6, 1893, covering all the crops and stock raised on the farm let by Ferguson to Wiggins on that day, and also all the stock, sheep, cattle, hogs, horses, tools, and machinery that might be used or kept on said farm. This chattel mortgage is contained in a lease given by Ferguson to Wiggins for the farm, and to secure the rent thereof.

3. Under a bill of sale of all the property described in the two mortgages above mentioned, given by Wiggins to Charles Ferguson, and dated November 6, 1895.

The defendant claimed under a chattel mortgage given by Wiggins to him on February 6, 1893, to secure the payment of $380, payable $50 each year for six years, and $80 seven years from date, with interest at 7 per cent. This mortgage covered the binder claimed by plaintiff to be covered by his mortgage and bill of sale, and certain cattle, sheep, crops on the farm, etc.; and also provided

that it should cover "all crops, of whatsoever name or nature, to be sown, planted, and grown on said premises during the years 1893 to 1899, inclusive, also all the increase of the above-described stock, and all other personal property which I may own or acquire during said years." This mortgage was prior in time of filing to the mortgages given by Wiggins to plaintiff's intestate, and was duly recorded in the town clerk's office, and renewed from year to year.

The real controversy between the parties arises over the interpretation of the clause in defendant's mortgage, "and all other personal property which I may own or acquire during said years." It appeared that Mr. Wiggins was the owner and was in possession of the property described specifically in the mortgage given by him to the defendant. The court instructed the jury substantially that, as to the articles of property specifically mentioned in his mortgage, there could be no question as to defendant's right and title, but that defendant could not claim a lien under the general clause, "and all other personal property which I may own or acquire during said years," upon the property afterwards acquired, and having no connection with the property owned by him at the time of the giving of the mortgage. It is this last part of the charge of which counsel for defendant complain, their contention being that defendant's mortgage was a lien upon all of the after-acquired property. It is conceded by counsel for plaintiff that it is settled in this State that one may mortgage after-acquired property, and the mortgage will be upheld; but it is contended that this rule does not apply to goods and chattels subsequently acquired which have no connection with property actually in existence at the date of the mortgage. This was undoubtedly the view taken by the court below. The general rule in many of the States is that at common law a mortgage can operate only on property actually in existence at the time of giving the mortgage, and then actually belonging to the mortgagor, or potentially belonging to him as an in-

cident of other property then in existence and belonging to him; that a mortgage on goods which the mortgagor does not own at the time of making the mortgage, though he may afterwards acquire them, is void in respect to such goods, as against subsequent purchasers or attaching creditors; and the rule in Massachusetts and Missouri and some other States is that, if a mortgage be made of a stock in trade, it will not at law cover additions afterwards made to the stock, though it be expressly framed to cover additions to the stock intended to be made to replace such as should be sold. *Barnard* v. *Eaton*, 2 Cush. 294; *Gregory* v. *Tavenner*, 38 Mo. App. 627. Cases from other States might be cited where the same rule is laid down. In this State, however, it has many times been held that a mortgage on a dealer's stock may be made to cover after-acquired goods; but it is held that they must be brought within its descriptive words, and a mortgage drawn to cover goods to be "added to" the stock, or gotten "for use" in the business, will not include goods bargained for, but never received at the place of business, or which, on being received, are devoted to some other purpose. *Curtis* v. *Wilcox*, 49 Mich. 425.

In *Eddy* v. *McCall*, 71 Mich. 497, the property in question covered by the chattel mortgage was certain horses, wagons, etc., and certain mill machinery, lumber, shingles, posts, and other materials in and about the planing mill of the mortgagors. The mortgage contained the following clause:

"And also all such other lumber, stock, or material of every kind which they may hereafter add to said business, and all other property which they may hereafter purchase and use in connection with said business."

The property was attached by a creditor, and the mortgagee brought trover. It was held that the clause in the mortgage was valid, even as against third parties; citing *Gay* v. *Bidwell*, 7 Mich. 525; *People* v. *Bristol*, 35 Mich. 29; *Cadwell* v. *Pray*, 41 Mich. 307; *American Cigar Co.* v. *Foster*, 36 Mich. 368; *Curtis* v. *Wilcox*, 49 Mich. 425; *Leland* v. *Collver*, 34 Mich. 418.

In no case, however, has this court held that a clause in a chattel mortgage like the one in the present case, to wit, "and all other personal property which I may own or acquire during said years," creates a valid lien upon after-acquired property not connected with the business in which the mortgagor was engaged, as against subsequent good-faith purchasers or attaching creditors, whatever may be the rule as between the parties themselves. The property in controversy here had no relation to that in possession of the mortgagor at the time of giving the mortgage. He did not then own the property, but afterwards acquired it, outside of the business in which he was then engaged. The case is not like the case of *Eddy* v. *McCall, supra,* nor like the case of *Dunn* v. *Michigan Club,* 115 Mich. 409. In the last case it appeared that the mortgage covered all the mortgagor's stock in trade, all book accounts, notes, etc., owned by him or appearing on the books of said business then being conducted by him, "and all future book accounts representing proceeds of sales of goods in mortgagor's stock, and all additions to the same." It was held that this covered all future book accounts, though not entered on the books.

The court below was not in error in the charge as given. The judgment must be affirmed.

The other Justices concurred.