WEST MICHIGAN SAVINGS BANK *v.* DATER.

1. APPEAL AND ERROR.

In an action for money had and received from the sale of canned goods claimed by plaintiff to be covered by its chattel mortgages, where the testimony was undisputed that the goods sold were not part of the mortgaged stock, plaintiff may not complain that said question was submitted to the jury.[1]

2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.

A new trial on the ground of newly-discovered evidence was properly denied where plaintiff could have procured the testimony it now deems material had diligence been exercised.[2]

Error to Berrien; White (Charles E.), J. Submitted June 3, 1925. (Docket No. 19.) Decided October 1, 1925.

Assumpsit by the West Michigan Savings Bank against George R. Dater for money had and received. Judgment for defendant. Plaintiff brings error. Affirmed.

*L. J. Lewis* (*W. J. Barnard,* of counsel), for appellant.

*Gore & Harvey,* for appellee.

MOORE, J. This suit is brought to recover money which the defendant received from the sale of certain canned goods. The plaintiff bank claims that it had two chattel mortgages on the goods sold, and that the defendant wrongfully converted the proceeds of the sale. The defendant denies that the canned stock in question ever was subject to the lien of plaintiff's

---

[1]Appeal and Error, 4 C. J. § 2891. [2]New Trial, 29 Cyc. p. 886.

mortgages. On August 28, 1920, William Traver, who was then engaged in the canning business at Hartford, Michigan, was indebted to the plaintiff in the sum of $6,000, and gave a mortgage to the bank, the material parts of which read:

"All the stock of canned goods, including strawberries, raspberries, cherries, peaches, plums, pears and apples, and stock of cans and sugar, and it is an express condition of this mortgage that said first party will at all times during the life of this mortgage keep at least a stock of twelve thousand dollars ($12,000.00) in value of above described goods on hand as security for this loan, and in case of failure to do so this mortgage will become immediately due and payable. * * * . Said goods and chattels now remaining and continuing in the possession of the said party of the first part, in canning factory and warehouse at Hartford, Michigan."

On October 7, 1920, the said Traver gave to the plaintiff another chattel mortgage. This mortgage reads in part:

"All the stock of the canned goods, cans and boxes, contained in the factory and warehouse of said first party, and situate north of the "Fruit Belt" line railroad, in the village of Hartford, Van Buren county, Michigan.

"(Said first party agrees to keep on hand at all times during the life of this mortgage a total stock of canned goods of at least eight thousand dollars ($8,000) and in case of failure to do so this mortgage and the note secured thereby shall become immediately due and payable, notwithstanding the time of payment shall not have arrived.) * * *

"Said goods and chattels now remaining and continuing in the possession of the said party of the first part, in the village of Hartford, Michigan."

In November, 1920, Mr. Traver's creditors elected Mr. Dater trustee of the property and business of Mr. Traver. On December 7, 1921, while Mr. Dater was acting as trustee, goods were shipped from the

factory at Hartford to C. F. Smith of Detroit, of the net value of $1,156.39, which amount was paid to Mr. Dater.   The bank claimed this money.   Mr. Dater declined to pay it to them, and this litigation followed.

At the close of the plaintiff's testimony the defendant asked for a directed verdict because—

"All the evidence introduced for and on behalf of the plaintiff fails to show that the money that was received by Mr. Dater, the defendant, was from the goods that were covered by their chattel mortgages. There is nothing at all to connect the goods sold by Mr. Dater with the chattel mortgage in any way. * * *

"There is nothing to show where those goods were taken from, that there was ever a chattel mortgage on them, or that they are in any way connected with the plaintiff's chattel mortgage.   And unless there is some evidence along that line the defendant cannot be held."

The motion was overruled.   At the close of all the testimony the motion was renewed with the further reason stated

"that this matter alleged and set forth in plaintiff's declaration was fully adjudicated and determined in the court of W. J. Banyon, referee in bankruptcy in the matter of William M. Traver, a bankrupt, now pending in the United States district court for the western district of Michigan."

This motion was overruled.

The trial judge after stating the claims of the parties charged the jury in part as follows:

"As I view the case here, if these goods were shipped from that Hartford factory were a part of the stock of goods that were covered by that chattel mortgage— in other words, if they were goods that were in that factory when that chattel mortgage was given, and were the remaining part of that stock of goods, then this plaintiff is entitled to recover.   If, however, as is claimed by this defendant, the goods that were

shipped from that Hartford factory, and that this check was given for ultimately, were goods that were brought over there after the fire in that other factory, then I charge you, gentlemen of the jury, that they were not covered by that chattel mortgage, and the plaintiff is not entitled to recover.

"This is the issue for you to determine—Where did those goods come from? Were they a part of the stock of goods that were mortgaged by Mr. Traver to that bank, or were they, as claimed by defendant, goods that were later brought over there from the Paw Paw factory? If they were a part of the original stock of goods, then I charge you that this plaintiff is entitled to recover. If on the other hand, they were brought over, as claimed by the defendant, from the Paw Paw factory, then I charge you as a matter of law, they were not covered by the chattel mortgage, and the plaintiff is not entitled to recover. That is the sole issue for you men to decide in this controversy.

"You are instructed that the defendant, Dater, stands in the same position in regard to this action as would William M. Traver, had he disposed of these goods in his individual capacity, and not by a trustee. Therefore Mr. Dater is not to be considered in the light of a third person in this transaction; and he has no further defense than could or might have been made by the said Traver. In other words, if Traver could not have legally disposed of these goods and converted the money to his own use, then neither could the said Dater."

The jury found a verdict for the defendant. The case is brought into this court by writ of error.

The counsel for plaintiff make several claims, but the important one is as follows, we quote from the brief:

"It is the claim of the appellant that under these two mortgages whatever canned goods came into the Hartford factory after these mortgages were given became automatically a part of the Traver stock of canned goods and were covered by the terms of the bank's mortgages, and when Mr. Dater, as trustee for the creditors, sold $1,156.39 worth of canned goods out

of that factory to Smith of Detroit on December 7, 1921, he sold property which belonged to the plaintiff bank and was liable to the bank for the proceeds thereof. * * *

"From whatever source he obtained the replenishing stock, when he placed that stock in the factory at Hartford after the execution of these mortgages, such additional stock automatically became a part of plaintiff's mortgaged goods, and the plaintiff was entitled under the law and under the facts to the proceeds received by Trustee Dater from the sale thereof;" citing *Greenaway* v. *Fuller,* 47 Mich. 557; *Eddy* v. *McCall,* 71 Mich. 497; *Dunn* v. *Michigan Club,* 115 Mich. 409, and other authorities.

In this connection it will be well to quote some of the testimony. Mrs. Leila Traver testified in part:

"*Q.* Take the first item of goods mentioned in that invoice.

"*A.* Twenty four cases No. 2 can black raspberries, in forty degree syrup, at $2.50 per dozen— $120.00. * * *

"*Q.* State where they came from.

"*A.* Paw Paw, Michigan.

"*Q.* When did they come from Paw Paw, Michigan?

"*A.* Sometime in August, I believe, my recollection is.

"*Q.* Was there a canning factory at Paw Paw, Michigan?

"*A.* Yes, sir.

"*Q.* Whose canning factory was it?

"*A.* Traver & Clover. * * *

"*Q.* Take the next item and read that.

"*A.* Forty cases No. 2 red pitted cherries, $2.75 per dozen, $220.00.

"*Q.* Do you know where those goods came from?

"*A.* Yes, sir.

"*Q.* Where did they come from?

"*A.* Paw Paw.

"*Q.* From what canning factory at Paw Paw?

"*A.* Traver & Clover.

"*Q.* When were they brought to Hartford?

"*A.* At the same time.

"*Q.* What was the condition of those goods?

"*A.* Smoky and blacked up and jammed.

"*Q.* Take the next item.

"*A.* 556 cases No. 2 can, cut wax beans, 75 cents per dozen—$834.00.

"*Q.* Do you know where those goods came from?

"*A.* Paw Paw.

"*Q.* From what canning factory?

"*A.* Traver & Clover.

"*Q.* When were they brought to the Hartford factory?

"*A.* At the same time.    *    *    *

"*Q.* Were those goods that were brought from Paw Paw to Hartford canned at Paw Paw?

"*A.* Yes, sir.

"*Q.* When they were brought to Hartford what was done with the goods?

"*A.* Polished, and lots of them thrown out.    By going through the fire, they were jammed so they leaked—and got ready for shipment.

"*Q.* What was finally done with the goods?

"*A.* Shipped to C. F. Smith & Co., Detroit."

Mr. Stevenson testified in part:

"*Q.* Did you know anything about goods being brought over from Paw Paw canning factory to the Hartford canning factory in the summer of 1921?

"*A.* Yes, sir.

"*Q.* What did you know about that?

"*A.* Why, those fire goods were brought over there after the fire.

"*Q.* Do you know what kind of goods were brought over?

"*A.* Yes, sir.    There were beans and a few cherries and mixed up, a little of everything.    *    *    *

"*Q.* What was the condition of the cans?

"*A.* Well, they were very dirty, all of them—black.

"*Q.* What was done with those goods in preparing them for market, if anything?

"*A.* They were polished up and loaded in the car."

No one disputed this testimony.    If any one may assert error because the trial judge submitted the case to the jury, it is not the appellant.    See 11 C. J.

501, note 30; *Ferguson* v. *Wilson,* 122 Mich. 97 (80 Am. St. Rep. 543).

A motion was made for a new trial. It is said the court erred in overruling it. The trial judge was of the opinion that plaintiff could have procured the testimony it now deems material if it had exercised diligence. We see no reason to disturb his conclusion.

The judgment is affirmed, with costs to the appellee.

MCDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, and FELLOWS, JJ., concurred. WIEST, J., did not sit.